IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEGGY ZAHN, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) 14 C 8370 |
| NORTH AMERICAN POWER & GAS, LLC, | )<br>) Judge Virginia M. Kendall |
| Defendant. | )<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Defendant North American Power & Gas, LLC ("NAPG") moves to dismiss Peggy Zahn's Complaint (Dkt. No. 1) because the Illinois Commerce Commission ("ICC") has exclusive jurisdiction over the dispute and, in the alternative, for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Zahn alleges that NAPG deceived her and others similarly situated when they promised variable rates on electricity that varied with market conditions, but delivered electricity at a rate she alleges exceeded the market price. Zahn seeks damages under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, and based on the Illinois common law of breach of contract and unjust enrichment. For the reasons stated below, NAPG's motion to dismiss (Dkt. No. 28) is granted.

**BACKGROUND**

The Court takes the following factual allegations in the Complaint as true of the purposes of this facial Rule 12(b)(1) motion to dismiss. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). NAPG is an Alternative Retail Electric Supplier ("ARES"), a type of energy supplier that competes against traditional utilities such as Commonwealth Edison.

(Compl. ¶ 10). In Illinois, consumers are permitted to choose between traditional utilities and ARES on a somewhat open market. (*Id*. ¶¶ 9-11). NAPG offered Zahn and others an introductory rate for electricity that was lower than the rate she had previously paid to Commonwealth Edison. (*Id.* ¶ 14). According to a disclosure statement that NAPG provided to potential customers, after the introductory rate expired NAPG offered a variable rate "calculated in response to market pricing, transportation, profit and other market price factors, plus all applicable taxes." (*Id.* Ex. 2 p. 2). More specifically, the price of electricity was "a variable price based on the method stated above and market prices for commodity, transportation, balancing fees, storage charges, NAP fees, profit, line losses plus applicable taxes." (*Id.* p. 3). The disclosure statement continued: "Your price may be higher or lower than [the traditional utility in your area] and current pricing is not a guarantee of future pricing and/or savings." (*Id.*). In an introductory letter to subscribers, including Zahn, NAPG summarized its pricing policy: "The electric plan is a market based variable rate and you will receive the current rate, quoted below, on your first month of service." (*Id.* Ex. 1).

Zahn, who resides in Libertyville, Illinois, began purchasing electricity from NAPG in August 2012. (*Id.* ¶ 5). During the time that Zahn was a customer, however, NAPG charged higher prices for electricity than Commonwealth Edison did. After the introductory rate expired, the rate that NAPG charged Zahn rate increased from $0.0599 per kW/hr to $0.1599 kW/hr, an increase of over 100%. (*Id.* ¶ 18). At no point between September 2012 and February 2014 did NAPG charge a rate below $0.0599 kW/hr.

Zahn claims that NAPG's statements regarding the factors that could cause the rate to vary were misleading because Zahn believed, and suggests that any reasonable consumer would believe, that the NAPG rate would vary consistently with the prevailing market price for

2

electricity. (*Id.* ¶22). Zahn claims that the price that Commonwealth Edison and other ARES charged provide a reliable approximation of the market price. (*Id.* ¶¶ 21-22). During the relevant time period from September 2012 to February 2014, Commonwealth Edison never charged more than $0.08324 kW/hr. The weighted average price of wholesale electricity based on Intercontinental Exchange data varied between $0.03127 and $0.08221 between September 2012 and February 2013. (*Id.* ¶ 24). A graph of electricity prices during the relevant time period including in the Complaint shows that the NAPG price varied in rough proportion to the average wholesale price:



These facts, Zahn argues, show that NAPG's price does not vary with prevailing market conditions. Because Zahn viewed NAPG's statements as to the factors that could cause the rate to vary as an assurance that the rate would vary in accordance with the prevailing market price, Zahn argues that a variation caused by factors other than the prevailing market price constitute a breach of contract. Zahn also argues that NAPG's statements as to the factors were false and

misleading in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. Finally, Zahn argues that NAPG has been unjustly enriched at her expense as a result of the higher than market rates.

## **LEGAL STANDARD**

A motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the Court's subject matter jurisdiction. "The party asserting federal jurisdiction bears the burden of demonstrating its existence." *Farnik v. F.D.I.C.,* 707 F.3d 717, 721 (7th Cir.2013). Where, as here, the Rule 12(b)(1) jurisdictional challenge concerns the sufficiency of the allegations in the complaint regarding subject matter jurisdiction, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *See United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (*overruled on other grounds by Minn-Chem., Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "include sufficient facts to state a claim for relief that is plausible on its face." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (internal quotation and citation omitted). "A claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff must allege that all elements of its claim are satisfied, but cannot survive a Rule 12(b)(6) motion to dismiss by alleging only legal conclusions. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1147 (7th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**DISCUSSION**

*I.      Rule 12(b)(1) Motion to Dismiss*

The Court, as it must, considers NAPG's jurisdictional challenge before its 12(b)(6) challenge. *See Yassan v. J.P. Morgan Chase and Co.*, 708 F.3d 963, 967 n.1 (7th Cir. 2013) (error for district court to consider 12(b)(6) challenge before 12(b)(1) challenge). NAPG contends that the Illinois Commerce Commission has exclusive jurisdiction over this action because it is essentially a case about an allegedly excessive rate. Zahn counters that she does not dispute the rate itself, but instead seeks civil damages for fraud and breach of contract. The Court agrees with NAPG. While this Court has diversity jurisdiction over the present Complaint, the state law on which the Complaint relies vests exclusive jurisdiction over this type of claim with the ICC. *See Glebocki v. City of Chicago*, 32 F. App'x 149, 154-55 (7th Cir. 2002) (district court lacked jurisdiction when state statute provided for exclusive jurisdiction in state agency); *Johnson v. Honda*, 125 F.3d 408, 418 (7th Cir. 1997) (district court properly dismissed complaint where state law provided for exclusive agency jurisdiction).

The issue, then, is whether Illinois courts of law would have jurisdiction over the Complaint or whether it would be within the exclusive jurisdiction of the ICC. The ICC "retains jurisdiction over claims submitted for reparations and the circuit court retains jurisdiction over claims submitted for civil damages." *SRT Enters., Inc., v. Direct Energy Bus., LLC*, No. 1-12-2760, 2013 WL 3379245 at *4 (Ill. App. Ct. 2013) (citing 220 ILCS 5/16-115B). The ICC also has exclusive jurisdiction over disputes relating to the contracts between ARES and their customers, which the ICC has interpreted to include unjust enrichment claims such as the one Zahn has alleged. *See* 220 ILCS 5/16-115B; *see also Chilku Enters. Inc. v. GDF Suez Energy Resources NA, Inc.*, No. 10-0157, 2011 WL 1474049 at *3 (Ill. C.C. 2011). "Reparation claims

are those maintaining that a utility has overcharged for a service, while claims for civil damages are those maintaining that the utility has engaged in other conduct to wrong the plaintiff." *SRT Enters.*, 2013 WL 3379245 at *4. (citing *Sheffler v. Commonwealth Edison Co.*, 955 N.E.2d 1110, 1124 (Ill. 2011)). "Other conduct" refers to unlawful conduct unrelated to the rate charged, such as billing for services not provided or fraudulently inducing customers to consume more than intended. *See Flournoy v. Ameritech*, 814 N.E.2d 585, 586-87 (Ill. App. Ct. 2004) (ICC did not have exclusive jurisdiction when complaint alleged that telephone provider intentionally dropped calls, requiring customer to pay extra connection fees); *Sutherland v. Illinois Bell*, 627 N.E.2d 145 (Ill. App. Ct. 1993) (ICC did not have exclusive jurisdiction over complaint alleging the telephone provider billed for services not provided). That Zahn has framed her dispute as one seeking civil damages for fraud and breach of contract rather than reparations for an unreasonable rate is immaterial. "The fact that plaintiff identified [her] causes of action in terms of seeking civil damages does not automatically impose the jurisdiction of the circuit court." *SRT Enters., Inc.*, 2013 WL 3379245 at *6; *see also Village of Evergreen Park v. Commonwealth Edison Co.*, 695 N.E.2d 1339, 1343 (Ill. App. Ct. 1998) ("The fact that plaintiff labels its action a breach of contract action is not dispositive nor does it transform plaintiff's action into a civil action for damages."). The ICC has jurisdiction over suits against ARES and public utilities alike when the dispute is "essentially" a dispute about rates. *See SRT Enters., Inc.*, 2013 WL 3379245 at *6.

The Court finds that the Complaint is more accurately characterized as seeking reparations than seeking civil damages and is therefore within the ICC's exclusive jurisdiction, than seeking civil damages. The present suit is "essentially" a reparations claim because Zahn's injury fundamentally stems from the allegation that NAPG charged too much for electricity. The

Complaint contains no allegations that NAPG charged Zahn for services it did not provide, that NAPG acted unlawfully to induce Zahn to incur more charges than desired, or that NAPG wronged Zahn in any way not directly related to the rate it charged for electricity. Instead, Zahn's only quarrel with NAPG relates to its rate, which was higher than the rate she believed she agreed to pay. Because Zahn's entire injury would have been avoided had NAPG charged a lower rate, the Court finds that the Complaint seeks reparations rather than civil damages. The Court therefore lacks jurisdiction over the Complaint because Illinois law grants the ICC exclusive jurisdiction over the matter.

## II.     *Rule 12(b)(6) Motion to Dismiss*

Even if the Court had jurisdiction over the Complaint, the Court would dismiss the Complaint for failing to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative to the jurisdictional argument above, NAPG moves to dismiss the Complaint in its entirety for its failure to state a claim upon which relief can be granted. The Complaint contains three causes of action that rely on the same basic facts described above. Again, the Court takes the Complaint's factual allegations as true for the Rule 12(b)(6) motion to dismiss. *See Adams*, 742 F.3d at 728.

### A.     Illinois Consumer Fraud and Deceptive Business Practices Act

Zahn first alleges that NAPG's pricing scheme violates the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq* ("ICFA"). The ICFA prohibits "unfair methods of competition and unfair or deceptive acts or practices." 515 ILSC 505/2. To state a claim under the ICFA, a plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5)

7

proximately caused by the deceptive act." *Philadelphia Indemnity Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009)). "[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). The framework applies to unfair practices as well as deceptive practices. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (citing *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d 56, 62 (Ill. 2006)). A practice is unfair if it: (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) substantially injuries consumers. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). The Complaint fails to allege either an unfair or deceptive practice or act by NAPG.

The Complaint fails to allege any deceptive practice on behalf of NAPG. The Complaint alleges, and the documents attached to the Complaint corroborate, that NAPG disclosed that its rate was "calculated in response to market pricing, transportation, profit and other market price factors, plus all applicable taxes" (Compl.. Ex. 2 p. 2) and, in more detail, could vary based on "market prices for commodity, transportation, balancing fees, storage charges, [NAPG] fees, profit, line losses plus applicable taxes." (*Id*. p. 3). Zahn argues that these statements deceive the consumer into believing that NAPG's rates will always reflect the market price, i.e. a price related to the Commonwealth Edison price and the average wholesale price on the Intercontinental Exchange.[1] The statements themselves, however, make no such representation.

---

[1] The Complaint alleges that Commonwealth Edison and the average wholesale price on the Intercontinental Exchange roughly approximate the market price for electricity during the time period relative to the Complaint. The Court accepts that characterization for the purpose of this motion to dismiss, but notes that it is somewhat perplexing that Zahn would leave Commonwealth Edison, apparently dissatisfied with its pricing, to become an NAPG subscriber in hopes that NAPG's "market" pricing would rise and fall to in tandem with the Commonwealth Edison pricing she had just switched suppliers to escape.

8

The factors that NAPG identifies as affecting price include factors not necessarily reflected in the prevailing market price, most notably profit. The Complaint contains factual allegations supporting the conclusion only that the NAPG price was higher than Commonwealth Edison's price, but not that NAPG's electricity price did not vary based on the factors cited,. The disclosures explicitly state that NAPG's price "may be higher or lower than [Commonwealth Edison] and current pricing is not a guarantee of future pricing and/or savings." *Id.* The Complaint contains no allegations that support the inference that prices did not rise and fall based on these factors and therefore no allegations that could lead to a finding of deceptive practices by NAPG. *See, e.g.*, *Chandler v. Amer. Gen. Finance, Inc.*, 768 N.E.2d 60, 69 (Ill. App. Ct. 2003) (common theme of ICFA claim is attractive solicitations where solicitor has no intention of delivering on the apparent promises).

Nor does the Complaint allege any unfair practice on the part of NAPG. Nothing in the Complaint suggests that NAPG did not disclose the factors that could cause its pricing to vary or even that NAPG waited until late in the process to disclose its policies. *Cf. Romo v. Fed. Nat'l Mortgage Ass'n*, 2014 WL 5620157 at *4 (N.D. Ill. Nov. 4 2014) (complaint stated IFCA unfair practices claim when lender waited until eve of closing to disclose fees). Nor is the pricing scheme oppressive. Nothing suggests that NAPG or anyone else forced Zahn to accept NAPG's rates. *Cf. Wendorf v. Landers*, 755 F. Supp. 2d 972, 979 (N.D. Ill 2010) ("plaintiff states a claim under the ICFA where the defendant's conduct gave plaintiff no reasonable alternative to avoid incurring a charge or penalty"). Zahn would have been able to cancel her NAPG service and return to Commonwealth Edison at any time with minimal notice and without a fee. (Compl. Ex. 2 p. 3). Any potential for unfairness based on Zahn's subjective misunderstanding of the

explicit terms of the contract is vitiated by the ease with which she could return to Commonwealth Edison or another ARES. Accordingly, Count I fails to state a claim.

B.   Breach of Contract

Zahn argues that the NAPG breached the Electricity Sales and Customer Disclsoure Statement by charging rates that varied by factors other than those contained in the agreement. NAPG counters that while its rates did not match the rates offered by Commonwealth Edison, the rates did vary based on the factors promised. "The required elements of a breach of contract claim in Illinois are the standard ones of common law: "offer and acceptance; (2) consideration; (3) definite and certain terms; (4) performance by the plaintiff of all the required conditions; (5) breach; and (6) damages." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012) (internal quotation marks and citations omitted). The Court finds that the Complaint does not contain sufficient factual allegations to support the reasonable inference that NAPG breached the agreement.

Zahn again characterizes the disclosures as promising a rate that varies with the market price. The plain language of the disclosures, however, belies this characterization and Zahn's characterizations are subordinate to the plain language of the contract. *See Centers v. Centennial Mortg., Inc.,* 398 F.3d 930, 933 (7th Cir. 2005) ("to the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls"). While Zahn characterizes her Complaint as alleging that NAPG varied its rates based on factors other than ones upon which the parties agreed, (*See* Compl. ¶ 48), the Complaint contains no factual allegations to substantiate that assertion. As described above, the Complaint contains factual allegations supporting only the conclusion that NAPG charged rates higher than Commonwealth Edison and the average wholesale price on the Intercontinental Exchange. These facts alone do

not plausibly allege that the NAPG rate was guided by factors other than the ones in the disclosures. Moreover, the disclosures expressly state that NAPG's rate may be higher than Commonwealth Edison's. In other words, Zahn has not pled facts adequate to show that NAPG breached a term of the agreement between the parties. NAPG promised a variable price that would vary based on "market prices for commodity, transportation, balancing fees, storage charges, [NAPG] fees, profit, line losses plus applicable taxes." Zahn's allegation that NAPG's prices did not track Commonwealth Edison's price – something the contract explicitly states is not guaranteed – does not constitute an allegation that the rate NAPG charge did not vary based on those conditions. Therefore, even assuming that the disclosures constituted a valid contract, there are no allegations in the Complaint that could constitute a breach of that contract. Accordingly, the Complaint does not a claim for breach of contract.

  C. Unjust Enrichment

  The Complaint also fails to state a claim for unjust enrichment. Absent sufficient allegations of deception, the claim for unjust enrichment must fail. *See Bober v. Glaxo Wellcome PLC,* 246 F.3d 934, 943 (7th Cir.2001) ("in the absence of any deception on the part of the defendants, the requisite [elements of unjust enrichment are] not present"). As described in more detail above, the Complaint does not contain allegations that NAPG deceived Zahn in its description of the criteria on which its prices are based. Moreover, a claim for unjust enrichment cannot stand on its own in light of the Court's dismissal of her ICFA. *See Martis v. Grinnell Mut. Reins. Co.,* 905 N.E.2d 920, 928 (Ill. 2009) ("Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery."). The Complaint therefore does not state a claim for unjust enrichment.

## **CONCLUSION**

For the reasons stated herein, the motion to dismiss is granted.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 5/22/2015